## LUTHER K. MADISON *versus* JOSEPH RANO.

Where a prisoner in execution wishing to take the benefit of the poor debt-
  or's oath caused a notice to be left for the creditor's attorney who was
  at the time absent, with K. at his store over which the attorney kept his
  office in a chamber and at the same time boarded at K.'s house, which
  was a few rods distant from the store, the notice was held not to have
  been legally served.

DEBT on a bond made the 16th July 1824, and condition-
ed that Ralph Thompson, a prisoner in the gaol at Haver-
hill, in the county of Grafton, at the suit of the plaintiff
should continue a true prisoner until lawfully discharged.
The defendant pleaded performance of the condition of
the bond.

The plaintiff replied an escape on the 17th August, 1824.
The defendant rejoined that Thompson on the 17th Au-
gust, 1824, having taken the previous steps required by
the statute was upon taking the poor debtor's oath law-
fully discharged.

The plaintiff in his surrejoinder alleged " that the said
Ralph applying to the justices &c. did not notify in writing
the said Madison, the creditor, his agent or attorney, of
said application and of the time and place, when and
where said oath would be administered fifteen days pre-
vious to taking said oath," and tendered an issue which
was joined.

The cause was tried here at February term 1826, when
it was admitted that Nathan Crosby was the attorney of
the plaintiff and it appeared in evidence that the said
Crosby lived in New Chester and boarded in the family
of E. Kimball, who had a store near his house, a chamber
over which Crosby rented of said Kimball and occupied
as an office. On the 2d August, 1824, one W. W. Sargent,
who had been employed to serve the notice of Thomp-

son's application on Crosby went for that purpose to Crosby's said office, but learning that Crosby was not at home, he being at that time out of town, gave the notice to the said Kimball in his store aforesaid and requested him to deliver it to Crosby on his return. Kimball put the notice into his trunk and on Crosby's return informed him, that there had been some papers left for him in his absence, which he, Kimball, believed were notices ; but Crosby did not ask for the papers, nor take them, nor were they delivered to him until after the 17th August, 1824.

There being no dispute with respect to these facts it was submitted to the jury to say whether Crosby in fact had notice of the application in season to have appeared at Haverhill on the 17th August, 1824, had he thought proper to appear, and the jury answered the question in the affirmative and a verdict was taken for the defendant subject to the opinion of the court upon the foregoing case.

*E. Cutts*, for the defendant.

The only question which this case presents is, as to the sufficiency of the notice to Mr. Crosby, the plaintiff's attorney, of Thompson's application to take the poor debtor's oath.

The third section of the statute of June 16, 1807, contains a provision " that no such debtor shall be admitted to the oath aforesaid unless he shall have given notice to the creditor or creditors who committed him to prison, or their agent or attorney, of the time and place when and where such oath will be administered fifteen days previous to taking said oath." The statute of February 15, 1791, for the ease and relief of poor debtors required that the notice should be given or left at the place of abode of the party to be notified a reasonable time before the time appointed for taking the oath. The statute of 1807, contains two material alterations of the former statute as to notice ; one as to the time ; that is, it must be " *fifteen days*" instead of a " *reasonable time*" before the taking of

the oath ; and the other, that it does not require, that the notice shall be given personally to the party to be notified or left at his last and usual place of abode, but leaves the notice to be served as rules of this court, or of the king's bench in England are served. This is the natural and obvious construction of the statute, and is such as was put upon the statute by this court in the case of *Rankin* v. *Nettleton*, 2 N. H. Rep. 305.

These rules may be served by leaving a copy with any person representing the person to be notified, at his dwelling house, or place of abode, or place of business. 1 Tidd's Prac. 453. The services of notices in actions of ejectment are very common in England. The regular mode of serving the notice of a declaration upon the tenant in possession is by reading it over to him and explaining it at the time. But a delivery to the wife if she be on the premises, or at the husband's house not on the premises, will answer. 2 Sellon, 95. Lord Kennyon assigns as the reason why the wife must be on the premises or at the husband's house, that it must appear that they are living together, so that she may give her husband notice. 6 D. & E. 765, *Doe* v. *Bayliss.*

Sellon, in his book of practice, states various cases where notices, which would otherwise be considered irregular, have on account of this particular circumstance been holden good.

In *Fenn* v. *Roe*, 1 N. Rep. 293, a service of a declaration in ejectment by nailing it on the barn door of the premises in which barn the tenant had occasionally slept, there being no dwelling house, and the tenant not being found at his last place of abode, was allowed to be a good service.

So a tender and reading of a notice aloud to the wife, when the tenant refused to receive it, is good. 2 Wilson, 263.

The sufficiency of the service of these notices is a question within the discretionary powers of the court, and is

to be settled by the particular exigency of each case. Sellon, 96.

Where the defendant and his attorney had been informed that a notice of declaration was stuck up in the office, the court refused to set aside a judgment for want of service of the notice at the defendant's last place of abode. 1 N. Rep. 279.

When an attorney boards at one house and has his office in another and he is absent, leaving no one in his office, the service of papers should be by delivery to some person belonging to the house where he boards, rather than to one where his office is kept. 2 Cowen's Rep. 484, *Lathrop* v. *Judivini.*

When the tenant of an estate holden by the year has a dwelling house at another place, the delivery of a notice to his servant at the dwelling house is strong presumptive evidence, that the master received the notice. 4 D. & E. 464, *Jones* v. *Marsh.*

The notice in this case was served in a correct and judicious manner. Mr. Crosby was absent from his house and office. The person who served the notice was not to go in pursuit of him, not knowing where to find him. The office was fastened. Had the notice been nailed to the door of the office, the first person who came along might have pulled it down. It might have been left at the place where he boarded with a servant. It was given to the head of the family where he boarded ; that was the most prudent course, and it is sufficient.

*N. A. Haven, jun.* for the plaintiff.

It does not appear from any thing in the case that legal notice was ever given. Notice is not a bare knowledge of the fact but knowledge brought home to the party in a prescribed form. The act of June 16, 1807, requires notice to be given fifteen days previous to taking the oath. And the act of February 15, 1791, which is on the same subject matter requires " notice to be given or left in writing at the place of abode of the party to be

notified." By these statutes the notice must be in writing and served at least fifteen days before the time of taking the oath. And this service must be by a written notice to the party, or leaving it at his place of abode.

Place of abode in our statutes always means the dwelling house in which the party resides. The case finds that the notice was left at the store of Ebenezer Kimball which was not the dwelling house of Crosby.

The only question, therefore, is, whether the delivery of a notice to E. Kimball, in Kimball's store, can be supported as a notice to Crosby, because Crosby boarded with Kimball ?

This notice was a rule to shew cause and must be governed by the practice relating to such rules. Rules to shew cause, says Tidd in his Practice, 445, must be served by leaving a copy with any person representing the party at his dwelling house or place of abode.

Service must be on some person *in* the office and belonging there or on some person in the dwelling house. 1 Johns. cases, 136, *Gelston* v. *Swartwout*; 1 Cowen's Rep. 72.

A service on one of the family in the office is not sufficient. 1 Johns. cases, 244, *Salter* v. *Bridgen*.

In *Wartney* v. *Grey*, 1 Starkie, 283, notice to produce papers was left with the wife of an attorney before trial. This was held to be insufficient notice. The plaintiff then proved that the attorney had admitted he had received notice and had the papers with him, but Lord Ellenborough ruled that it was not competent for him to give parol evidence of this fact.

RICHARDSON, C. J. This case has been very well argued and we shall now proceed in the first place to examine the statutes and see what notice they require to be given to the creditor before a debtor can be legally discharged upon taking the oath. It is believed that when the requisitions of the statutes are well understood,

there can be no difficulty in settling the question which has been raised in this case.

The statute of February 15, 1791, enacts that "such court or justices applied to shall notify in writing the creditor, &c. of the application made to them as aforesaid and of the time when and place where they will attend, &c. giving reasonable time for attendance of the party notified, and such notice being given or left in writing at the place of abode of the party so to be notified a reasonable time before the time ordered for such caption, &c."

The statute of June 16, 1807, enacts "that no such debtor shall be admitted to the oath aforesaid, unless he shall have given notice to the creditor or creditors who committed him to] prison, or their agent or attorney, of the time and place, when and where such oath will be administered fifteen days previous to taking said oath."

We are well satisfied, upon an attentive consideration of these statutes, that this clause in the statute of 1807 was not intended as a substitute for the clause in the statute of 1791, but merely to require the notice to be served "*fifteen days*" previous to the taking of the oath instead of "*a reasonable time.*" We are therefore of opinion that there must be a notice in writing and that it must be served upon the person to be notified, whether party or attorney, by being delivered to him personally or left at his usual place of abode.

It is then very clear that the fact of actual notice found by the jury is wholly immaterial. And it seems to us to be equally clear that the notice left with Kimball at his store was not a legal notice. It was neither given to Crosby personally nor left at his place of abode. In addition to the authorities which have been cited by the plaintiff's counsel, and which are very directly in point, is the case of the *Commonwealth* v. *Cummings*, 16 Mass. Rep. 194, where under a statute requiring notice to be left at the usual place of abode, a notice left at the place of business of

the person to be notified was held to be insufficient. If
this decision be correct, a notice left at Crosby's office
would not have been legal. It is the opinion of the court
that there must be in this case